# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICRODENTAL LABORATORIES, INC.**, | Case No. 2:21-cv-482-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **STEVE HOOFARD**, | |
| Defendant. | |

Vanessa M. Anderson, ALCHEMY LAW LLC, P.O. Box 14752, Portland, OR 97293; and James M. Carman, CARMAN, CALLAHAN & INGHAM LLP, 266 Main Street, Farmingdale, NY 11735. Of Attorneys for Plaintiff.

Angela M. Ferrer, BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP, 921 SW Washington Street, Suite 516, Portland, OR 97205. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In its First Amended Complaint (FAC), Plaintiff MicroDental Laboratories, Inc. (MicroDental) asserts two claims against Defendant Steve Hoofard (Hoofard). ECF 13. MicroDental's first claim alleges breach of two promissory notes, for which MicroDental seeks approximately $303,000. MicroDental's second claim alleges breach of a noncompetition agreement, for which MicroDental seeks approximately $72,000 in damages plus preliminary and permanent injunctive relief enforcing Hoofard's compliance with the noncompetition

agreement through February 22, 2022. Now before the Court is Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery. ECF 12. For the following reasons, the Court denies Plaintiff's motion.

**STANDARDS**

In deciding whether to grant a motion for temporary restraining order (TRO), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) that an injunction is in the public interest. *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *See All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

In addition, a TRO is necessarily of a shorter and more limited duration than a preliminary injunction.[1] Thus, the application of the relevant factors may differ, depending on whether the court is considering a TRO or a preliminary injunction.[2] Indeed, the two factors most likely to be affected by whether the motion at issue is for a TRO or a preliminary injunction are the "balancing of the equities among the parties" and "the public interest." Finally, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Entmt. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

## BACKGROUND

Hoofard is a certified dental technician and a specialist in the field of cosmetic dentistry appliances. Hoofard owned and operated a lab in Hermiston, Oregon that fabricated dental restorations and appliances. In December 2011, Hoofard sold that lab to MicroDental, and MicroDental then employed Hoofard as manager of the lab under a contract with an initial three-

---

[1] The duration of a TRO issued *without* notice may not exceed 14 days but may be extended by a court once for an additional 14 days for good cause, provided that the reasons for the extension are entered in the record. Fed. R. Civ. P. 65(b)(2). When a TRO is issued with notice and after a hearing, however, the 14-day limit for TROs issued without notice does not apply. *See Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 n.1 (D. Or. 2016), citing *Horn Abbot Ltd. v. Sarsaparilla Ltd.*, 601 F. Supp. 360, 368 n.12 (N.D. Ill. 1984). Nevertheless, absent consent of the parties, "[a] court may not extend a 'TRO' indefinitely, even upon notice and a hearing." *Id.* Accordingly, unless the parties agree otherwise, a court should schedule a preliminary injunction hearing to occur not later than 28 days after the date that the court first issues a TRO.

[2] A preliminary injunction also is of limited duration because it may not extend beyond the life of the lawsuit. That is the role of a permanent injunction, which a court may enter as part of a final judgment, when appropriate. A preliminary injunction, however, may last for months, if not years, while the lawsuit progresses towards its conclusion. *See Pac. Kidney*, 156 F. Supp. 3d at 1222 n.2.

year term (the Employment Agreement). ECF 12-2. Section 20 of the Employment Agreement provided, among other things, that the agreement shall be governed by and construed in accordance with the laws of the state of Oregon and that "[t]he parties hereto hereby irrevocably submit to the *exclusive jurisdiction* of the courts of the State of Oregon and the federal courts of the United States of America located in Oregon . . . over any dispute arising out of or relating to this Agreement" (emphasis added). ECF 12-2 at 13.

Effective December 31, 2016, MicroDental and Hoofard entered into two additional agreements: (a) Amendment No. 1 to the Employment Agreement (ECF 12-4); and (b) Noncompetition Agreement (ECF 12-3). In its motion for TRO and preliminary injunction, MicroDental seeks to enforce both the Noncompetition Agreement and the prohibitions in the Employment Agreement that restrict Hoofard from soliciting, accepting, or servicing any of MicroDental's customer accounts or clients through February 10, 2022.

Among other things, Amendment No. 1 to the Employment Agreement deleted Section 20 of the Employment Agreement in its entirety and replaced it with a new Section 20. In the new Section 20, MicroDental and Hoofard agreed that the Employment Agreement shall be governed by and construed in accordance with the laws of the state of Washington. More importantly, the parties also agreed in the new Section 20(b), in relevant part, as follows:

> *The parties hereto irrevocably submit to the exclusive jurisdiction of the courts of the State of Washington and the federal courts of the United States of America located in Washington*, and appropriate appellate courts therefrom, over any dispute arising out of or relating to this [Employment] Agreement or any of the transactions contemplated hereby, and each party hereby irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such courts.

ECF 12-4 at 5 (emphasis added) (Section 20(b)).

Similarly, in their 2016 Noncompetition Agreement, MicroDental and Hoofard agreed that, among other things, the Noncompetition Agreement shall be governed by and construed in accordance with the laws of the state of Washington. More importantly, the parties also agreed in Section 8(b), in relevant part, as follows:

> *The parties hereto irrevocably submit to the exclusive jurisdiction of the courts of the State of Washington and the federal courts of the United States of America located in Washington*, and appropriate appellate courts therefrom, over any dispute arising out of or relating to this [Noncompetition] Agreement or any of the transactions contemplated hereby, and each party hereby irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such courts.

ECF 12-3 at 5 (emphasis added) (Section 8(b)).

There are two other sections in the Noncompetition Agreement that should be mentioned: Section 7 and Section 4. Section 7 of the Noncompetition Agreement is titled "Dispute Resolution." Section 7 reads, in relevant part: "Subject to the provisions of **Section 4** of this [Noncompetition] Agreement, in the event of any dispute, claim or disagreement arising out of or relating to this Agreement or breach thereof, the parties shall use their best efforts to settle such disputes, claims, questions, or disagreement." ECF 12-3 at 4 (bold in original). Section 7 further requires the parties to consult and negotiate for 60 days. If that does not resolve the dispute, then any remaining differences may be submitted to non-binding mediation. If, 30 days after being submitted to non-binding mediation the dispute still remains, "either party may seek relief in any court of competent jurisdiction, subject to the provisions of **Section 8**." ECF 12-3 at 4-5 (bold in original).

Finally, Section 4 of the Noncompetition Agreement is titled "Specific Performance." After acknowledging that any breach by Hoofard of the provisions of the Noncompetition

Agreement "could cause irreparable harm to Micro[Dental] or its parent company MDI," the parties agreed, in relevant part, as follows:

> Accordingly, notwithstanding the provisions of **Section 7** of this [Noncompetition] Agreement, Micro[Dental] and MDI shall be entitled to apply for and obtain injunctive relief (temporary, preliminary and permanent) in order to restrain the breach or threatened breach of, or otherwise to specifically enforce, any of the provisions of the Agreement, without the requirement to post a bond or provide other security. Nothing herein shall be construed as a limitation or waiver of any other rights or remedies that may be available to Micro[Dental] or MDI for such breach or threatened breach. *For emergency relief (including temporary and preliminary injunctive relief), an application may be made in any court of competent jurisdiction*[.]

ECF 12-3 at 4 (bold in original) (emphasis added).

## DISCUSSION

Hoofard opposes MicroDental's motion for TRO and preliminary injunction on several grounds. Hoofard first argues that MicroDental cannot demonstrate a likelihood of success on the merits before this Court because MicroDental has filed its lawsuit in the wrong forum, at least regarding the claims under the Noncompetition Agreement and the Employment Agreement, which undergird MicroDental's motion for TRO and preliminary injunction. The Court agrees.[3]

---

[3] Hoofard also asserts that he has not breached either the Employment Agreement or the Noncompetition Agreement. He presents evidence that he has not solicited or accepted work from MicroDental's customers and has not engaged in competition with MicroDental within the "Restricted Territory," a term defined in the Noncompetition Agreement. Hoofard also argues that the restrictive covenants in the two agreements are unenforceable under Washington law because the geographic scope is unreasonable. Further, Hoofard contends that MicroDental has failed to show a likelihood of irreparable injury, that the equities tip in its favor, or that a preliminary injunction would be in the public interest. The Court, however, need not resolve any of these contested issues.

Hoofard states that Section 8(b) of the Noncompetition Agreement "unambiguously provides that any suit arising out of the Agreement must be filed within the state of Washington." ECF 17 at 9. MicroDental replies:

> Micro[D]ental may seek emergency relief in an Oregon court without first engaging in dispute resolution under the terms of the Noncompetition Agreement. Section 4 of Noncompetition Agreement states, "notwithstanding the provisions of Section 7" Micro[D]ental "shall be entitled to apply for and obtain injunctive relief (temporary, preliminary, and permanent) in order to restrain the breach or threatened breach of . . . any provisions of this Agreement." Section 4 further states, "For emergency relief (including temporary and preliminary injunctive relief) an application may be made in any court of competent jurisdiction . . ." Accordingly, Micro[D]ental may seek injunctive relief in this Court.

ECF 21 at 5 (ellipses in original). By invoking this provision in Section 4 of the Noncompetition Agreement (Specific Performance) that reads "notwithstanding the provisions of Section 7," MicroDental misses the mark. All this provision, and its reference to *Section 7*, implies is that MicroDental need not employ the otherwise mandatory negotiation and non-binding mediation prelitigation requirements under Section 7 before seeking a TRO or preliminary injunction. Section 4 does *not* say "notwithstanding the provisions of Section 8," and Section 8 of the Noncompetion Agreement provides for mandatory exclusive jurisdiction in the state or federal courts in Washington.

MicroDental's argument, therefore, is that Section 4 allows it to seek a TRO or preliminary injunction "in any court of competent jurisdiction" and that the United States District Court for the District of Oregon is such a court. MicroDental's argument would be persuasive if Section 4 had read "notwithstanding the provisions of Section 7 or Section 8," but it does not. It reads only "notwithstanding the provisions of Section 7." As the Court next discusses, it is not the job of a court in construing a contract to add terms that are not present (such as adding "or

Section 8" in Section 4) or to delete or ignore terms that are (such as deleting the word "exclusive" in Section 8). Based on this principle, the Court concludes that based on the express text in Section 8, the words "court of competent jurisdiction" in Section 4 do not include any courts outside the state of Washington.

Under Washington law, "[i]n construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous." *Mayer v. Pierce Cty. Med. Bureau, Inc*., 80 Wash. App. 416, 420 (1995). Further, "[i]nterpretation of an unambiguous contract is a question of law." *Id*.

Here, the Court concludes that there is no ambiguity in the Noncompetition Agreement (or the Employment Agreement) and that the term "court of competent jurisdiction" is not inconsistent with the mandatory exclusive jurisdiction provision in Section 8. But even if there were an ambiguity or inconsistency, Washington law would then employ two principles that favor Hoofard. The first principle is that "when there is an inconsistency between a general and a specific provision, the specific provision ordinarily qualifies the meaning of the general provision." *Id*. at 423. The term "court of competent jurisdiction" is more general than the statement: "The parties hereto irrevocably submit to the exclusive jurisdiction of the courts of the State of Washington and the federal courts of the United States of America located in Washington." Thus, Washington law compels the conclusion that the only "courts of competent jurisdiction" under the Noncompetition Agreement (and the Employment Agreement) are the federal and state courts in Washington.

The second principle is that "courts favor the interpretation of a writing which gives effect to all of its provisions over an interpretation which renders some of the language

meaningless or ineffective." *Id*. Because Section 4 does not include any reference to Section 8 in its "notwithstanding" text, interpreting Section 4 as urged by MicroDental would render Section 8's mandatory exclusive jurisdiction text meaningless. *See also Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. . . . Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." (citation omitted)).

The Ninth Circuit distinguishes between a forum selection clause that is mandatory and one that is merely permissive. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir. 1995). Further, "the question whether the forum selection clause is mandatory or permissive is a matter of contract interpretation." *Id*. at 1036. "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *Id*. at 1037. The text in Section 8(b) of the Noncompetition Agreement, which is identical to the text in Section 20(b) of the amended Employment Agreement, satisfies this test. These forum selection clauses contain language that clearly designate the state and federal courts in Washington as the exclusive forums. Nothing in Section 4 of the Noncompetition Agreement is to the contrary, especially because it expressly carves out Section 7's mandatory negotiation and non-binding mediation requirements when MicroDental seeks a TRO or preliminary injunction but does not mention, let alone exclude, Section 8's mandatory forum selection clause.[4]

---

[4] At oral argument, MicroDental noted that the final sentence of Section 7 reads: "If the matter has not been resolved pursuant to the aforesaid mediation procedure within thirty (30) days of the commencement of such procedure, or such other period as the parties agree, either party may seek relief in any court of competent jurisdiction, subject to the provisions of **Section 8**." ECF 12-3 (§ 7) (bold in original). From this, MicroDental argues that the "carve out"

In sum, MicroDental has brought its second claim for relief and its motion for TRO and preliminary injunction in the wrong court. Accordingly, MicroDental has not shown a likelihood of success on the merits (or even serious questions going to the merits), at least in this Court.

## CONCLUSION

The Court DENIES Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery. ECF 12.

**IT IS SO ORDERED**.

DATED this 28th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

of Section 7 contained in Section 4 necessarily also carves out Section 8 from Section 4. The Court rejects this argument. All that the final sentence in Section 7 says is that a party must wait at least thirty days after commencing the non-binding mediation required under that section before seeking relief from a court, which relief is subject to the provisions of Section 8, including its mandatory forum selection clause. The express carve out of Section 7 contained in Section 4 does not carry with it, implicitly or otherwise, any carve out of Section 8 in the context of a motion for TRO or preliminary injunction. Thus, if MicroDental wants the temporary or preliminary relief it now seeks, it must obtain that relief from a state or federal court in Washington.